**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-30563

_____


WILLIE JACKSON,

                                    Petitioner-Appellee,

              VERSUS

        ED DAY, Warden, ET AL.,

                                    Respondents,

              ED DAY, Warden,

                                    Respondent-Appellant.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(95-CV-1224"K")

_____


July 16, 1997

Before REYNALDO G. GARZA, SMITH, and EMILIO M. GARZA, Circuit
Judges.

JERRY E. SMITH, Circuit Judge:[*]


        The State of Louisiana appeals a grant of habeas corpus relief

to Willie Jackson, a state prisoner convicted of attempted

aggravated rape and first degree robbery.  Concluding that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion
should not be published and is not precedent except under the limited
circumstances set forth in 5TH CIR. R. 47.5.4.

district court erred in finding that Jackson was prejudiced by his attorney's alleged errors, we reverse.

I.

In 1986, Beverly S. was assaulted and raped by an unknown man. Jackson became a suspect when a note, apparently written by the assailant and discovered by Beverly, was found in her pocket immediately following the assault. The note was written on the back of a bank deposit slip that the police traced to an account belonging to Jackson and his mother. Beverly positively identified Jackson as the rapist in both a photo and a physical lineup; identified Jackson's Chrysler Cordoba as the vehicle in which the assault had occurred; and identified items of personal property that were discovered in the vehicle and in Jackson's mother's home. Accordingly, Jackson was charged with aggravated rape and armed robbery.[**]

Although Jackson originally was deemed to be indigent, his parents subsequently retained a lawyer for him. Counsel requested funds to obtain a forensic odontologist for the defense, but the Jacksons refused to pay for the expert witness. Counsel did not ask the court to appoint a forensic odontologist, concluding that Jackson did not qualify as indigent. Therefore, although counsel previously had expressed his intention to call a forensic

---

[**] For a detailed account of the facts, *see State v. Jackson*, 570 So. 2d 227, 228-29 (La. App. 5th Cir. 1990).

2

odontologist at trial, no such expert testified.  Instead, Jackson relied on alibi witnesses who testified that he had been in Natchez, Mississippi, at the time of the offense.

At trial, Beverly positively identified Jackson as the rapist. Her testimony was corroborated by physical evidence recovered from the automobile, personal items found in Jackson's mother's home, and the incriminating note.  Finally, a forensic odontologist called by the state testified that Jackson's dental patterns positively matched bite marks left on the victim.  Jackson was convicted of attempted aggravated rape and armed robbery.

Jackson retained new counsel and moved for a new trial on the basis of newly discovered evidence.  Jackson sought to introduce the statement of his brother, Milton Jackson, who claimed that he was in possession of the family automobile on the night of the rape, that he was with Beverly, that he had written the incriminating note on the deposit slip, and that he was the man who had bitten Beverly.[***]  The court denied a new trial, and the conviction was affirmed on direct appeal.  *See State v. Jackson*, 570 So. 2d 227 (La. App. 5th Cir. 1990).

In post-conviction proceedings initiated in the state courts, Jackson renewed his claim of actual innocence, to no avail.  In evidentiary hearings conducted pursuant to those proceedings,

---

[***] While Milton Jackson claimed to be the individual with whom Beverly had sex on the night in question, he did not admit to raping her.  To the contrary, Milton insisted that the sex was consensual, explaining that he had bitten her ear in a subsequent altercation.

3

Milton Jackson testified that it was he, not Willie, who had been with Beverly.  Moreover, Jackson substantiated his claim by introducing the statement of a handwriting expert, who stated that the incriminating note had been written by Milton, not Willie, and the statement of a forensic odontologist, who stated that the bite marks on the victim matched the dentition of Milton, not Willie. Nevertheless, the Louisiana courts denied post-conviction relief.

Therefore, Jackson filed a federal habeas petition, alleging ineffective assistance of counsel and actual innocence.  The district court granted relief, concluding that counsel's failure to request state funds for a forensic odontologist constituted ineffective assistance.****

## II.

The district court found that Jackson received ineffective assistance of counsel because his attorney had failed to request state funds to retain a forensic odontologist.  For purposes of appeal, we assume *arguendo* that the performance of counsel was ineffective.  Nevertheless, even if the performance of counsel was ineffective, Jackson is not entitled to habeas relief, as he has failed to demonstrate that he suffered prejudice as a consequence

---

**** Originally, Jackson alleged that trial counsel had been constitutionally ineffective and claimed that newly discovered evidence proved his innocence.  After the district court denied habeas relief, however, Jackson abandoned the latter claim, moving for reconsideration of his ineffective assistance claim.  The district court conducted an evidentiary hearing and granted habeas relief.

of any ineffective assistance.

## A.

Ineffective assistance of counsel is a mixed question of law and fact that we review *de novo*. *See, e.g., Salazar v. Johnson*, 96 F.3d 789, 791 (5th Cir. 1996); *Johnson v. Scott*, 68 F.3d 106, 109 (5th Cir. 1995), *cert. denied*, 116 S. Ct. 1358 (1996).[*****] A habeas petitioner alleging ineffective assistance must demonstrate that the performance of counsel was unreasonable and that this ineffective assistance was prejudicial to his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the standard of review governing ineffective assistance claims). Failure to prove either unreasonable performance or prejudice is fatal to a claim of ineffective assistance, and a court need not consider both prongs if the claim can be dismissed upon either one. *Washington*, 466 U.S. at 687; *Johnson*, 68 F.3d at 109.

To establish prejudice, the petitioner must demonstrate a "reasonable probability" that, absent the errors of his attorney,

---

[*****] Because Jackson's habeas petition was pending on the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), we do not apply the amended standards of review codified in Chapter 153 of the AEDPA to the instant case. In *Lindh v. Murphy*, 65 U.S.L.W. 4557, 4558-62 (U.S. June 23, 1997), the Court held that the provisions of chapter 153, which restrict federal review of state convictions, may not be applied to habeas petitions pending on the effective date of the act. *See Green v. Johnson*, No. 96-50669, 1997 WL 359070, at *2-*3 (5th Cir. June 27, 1997).

the jury would have harbored a reasonable doubt concerning guilt. *Washington*, 466 U.S. at 695. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *accord Kyles v. Whitley*, 115 S. Ct. 1555, 1566 (1995). Jackson cannot demonstrate that the failure to retain a forensic odontologist substantially prejudiced his trial.

## B.

In order to decide whether a petitioner has suffered prejudice, we must examine the alleged ineffective assistance of counsel in the context of the entire record. *Washington*, 466 U.S. at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. The evidence against Jackson was overwhelming. Therefore, the failure of counsel to retain a forensic odontologist does not render the verdict fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Strickland*, 466 U.S. at 687.

If counsel had requested expert funds, the jury would have been confronted with the conflicting testimony of two forensic odontologists, one of whom would have testified that the wounds were attributable to Willie Jackson, and the other of whom would

6

have discredited that expert opinion.[******]  Therefore, while this expert testimony certainly would have aided the defense, it merely would have rebutted the testimony of the state's expert.  While Jackson need not demonstrate that the testimony of a forensic odontologist would have been sufficient to guarantee an acquittal, he must demonstrate a reasonable probability that, had the forensic odontologist testified, the jury would have harbored a reasonable doubt concerning his guilt.  Under the circumstances of this case, there is no reasonable probability that a "battle of the experts" would have been sufficient to raise a reasonable doubt.

In addition to the opinion of the state forensic odontologist, the prosecution introduced extensive incriminating physical and circumstantial evidence from which the jury necessarily inferred that Willie Jackson had committed the offense.  For example, the prosecution introduced the handwritten note discovered by Beverly, and explained that the note was written on the back of a deposit slip for a bank account belonging to Jackson and his mother.  Furthermore, Beverly identified the Jackson family automobile as the vehicle in which the assault occurred, and she identified items of personal property that were discovered in the automobile and at

---

[******] Importantly, the defense odontologist could not have testified that the wounds were attributable to the defendant's brother, Milton, because it is undisputed that Milton did not come forward until after the trial.  Likewise, it is undisputed that Jackson's attorney had no knowledge of Milton.  Therefore, although the defense odontologist could have testified at trial that the bite marks on the victim did not match the dental patterns of Willie Jackson, he could not have incriminated Milton Jackson.

7

the home of Jackson's mother.[*******]  In addition, blood samples taken from Jackson were consistent with the assailant's blood type. Finally, and most importantly, Beverly testified and identified Willie Jackson as the attacker.

Given the overwhelming evidence incriminating Willie Jackson, the failure of trial counsel to retain a forensic odontologist does not render the jury verdict "fundamentally unfair or unreliable." *Fretwell*, 506 U.S. at 369.  Although forensic testimony would have been valuable, there is no "reasonable probability" that the jury would have harbored a reasonable doubt regarding Jackson's guilt. The evidence incriminating him was too damning to overcome.  *See Washington*, 466 U.S. at 695.[********]

## III.

Insofar as Jackson renews his actual innocence claim, arguing

---

[*******] The fact that this evidence would have incriminated both Milton Jackson and Willie Jackson is of no relevance, as defense counsel did not have the benefit of Milton Jackson's incriminating statement at the trial. Accordingly, the jury did not have the opportunity to weigh the physical and circumstantial evidence offered by the prosecution in light of Milton's subsequent admissions, but necessarily imputed this incriminating evidence solely to Willie Jackson.  Therefore, the damning effect of this evidence cannot be ignored.

The test on habeas is whether there is a reasonable probability that the jury would have harbored a reasonable doubt in the absence of errors by counsel, not whether the defendant is factually innocent of the offense.  Consequently, we must evaluate the evidence through the eyes of the jury, rather than serving as a new trier of fact.

[********] *See*, *e.g.*, *Johnson v. Scott*, 68 F.3d 106, 109-11 (5th Cir. 1995) (denying an ineffective assistance claim for failure to obtain forensic experts because the evidence of guilt was overwhelming), *cert. denied*, 116 S. Ct. 1358 (1996).

8

that newly discovered evidence establishes his factual innocence, his argument is futile.  The Supreme Court has expressly held that freestanding claims of actual innocence are not cognizable under 28 U.S.C. § 2254.

A.

In the original habeas petition filed in the district court, Jackson claimed that newly discovered evidence proved that he was "actually innocent," exhaustively recounting the evidence adduced at trial and offering the testimony of Milton Jackson, who claimed that he was in possession of the family automobile on the night of the rape, that he had sex with Beverly that night, that he had written the incriminating note on the bank deposit slip, and that he was the man who had bitten Beverly.  Juxtaposing this "newly discovered" evidence with physical evidence adduced at trial, Willie Jackson argued that his brother, Milton, had committed the offense, whereas Willie was "actually innocent."  Every Louisiana court to consider this claim rejected it, however, as did the federal district court.

In a motion for reconsideration in federal district court, Jackson urged the court to reconsider his ineffective assistance claim, abandoning his "actual innocence" claim.  The court did so, noting that the "actual innocence" claim was not before the court. Consequently, the court granted habeas relief solely on the basis of ineffective assistance.  Accordingly, the "actual innocence"

9

claim is not the subject of this appeal.

Nevertheless, Jackson apparently attempts to renew his "actual innocence" claim on appeal, recounting the evidence and testimony underlying his claim that newly discovered evidence exculpates him. Because Jackson has not suffered ineffective assistance, however, he cannot seek relief upon his claim of actual innocence. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the ConstitutionSSnot to correct errors of fact." *Id*.

Therefore, "actual innocence" claims do not offer an independent basis for federal habeas relief, but merely create a gateway by which federal constitutional claims, otherwise procedurally barred, may be adjudicated on the merits. *Id*. at 404. Like the unsuccessful petitioner in *Herrera*, however, Jackson "does not seek excusal of a procedural error so that he may bring an independent constitutional claim challenging his conviction or sentence, but rather argues that he is entitled to habeas relief because newly discovered evidence shows that his conviction is factually incorrect." *Id*. Such freestanding claims of actual innocence are insufficient to state a claim upon which federal

10

habeas relief may be granted.  *Id*. at 405.

B.

We are not blind to the evidence suggesting that the wrong man has been convicted of Beverly's rape, nor are we sanguine about our decision to deny habeas relief under these circumstances.  The fact remains, however, that the function of federal habeas is to vindicate the constitutional rights of state prisoners, not to relitigate guilt and innocence.  "Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence."  *Herrera*, 506 U.S. at 401.  The appropriate forum for Jackson's claim of "actual innocence" is the state executive branch, not the federal courts.  Executive clemency is "the historic remedy for preventing miscarriages of justice where judicial process has been exhausted."  *Id.* at 412.

There has been no constitutional error in this case.  Indeed, if there has been a miscarriage of justice, the responsibility for that tragedy lies first and foremost with the members of Jackson's familySSparticularly Milton JacksonSSwho concealed exculpatory evidence until *after* Willie Jackson had been convicted; it is not the fault of Jackson's attorney, whose representation was fatally undermined by the uncooperative and deceitful actions of the family.

11

REVERSED and REMANDED.